W. Kent NIELSEN and Patricia Nielsen, et al.,

v.

PROFESSIONAL FINANCIAL MANAGEMENT, LTD., et al.

Franklin J. BURNS,

v.

PROFESSIONAL FINANCIAL MANAGEMENT, LTD., et al.

Franklin J. BURNS and Marian R. Burns,

v.

PROFESSIONAL FINANCIAL MANAGEMENT, LTD., et al.

Paul A. BENSON, et al.,

v.

PROFESSIONAL FINANCIAL MANAGEMENT, LTD., et al.

Charles W. BETZ, et al.,

v.

PROFESSIONAL FINANCIAL MANAGEMENT, LTD., et al.

Civ. Nos. 4–85–1600, 4–85–1642, 4–85–1643, 4–86–570, 4–86–752, 4–86–571 and 4–86–672.

United States District Court, D. Minnesota, Fourth Division.

April 15, 1987.

Richard I. Diamond, and Jeff Ross, Estes Parsinen & Levy, Minneapolis, Minn., for plaintiffs W. Kent and Patricia Nielsen, et al., Franklin J. Burns, and Franklin J. and Marian R. Burns.

William P. Luther, Luther, Ballenthin & Carruthers, and Alonzo B. Seran, Olson, Gunn & Seran, Minneapolis, Minn., for plaintiffs Paul A. Benson, et al., and Charles W. Betz, et al.

Thomas J. Shroyer, and Mitchell H. Cox, Moss & Barnett, Minneapolis, Minn., for defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Joseph Louis Kmetz, and James Erwin Kmetz.

Donald F. Hunter, Gislason, Dosland, Hunter & Malecki, Minneapolis, Minn., for defendants Olstead & Associates, Inc., and Arthur Walter Olstead.

Frank A. Dvorak, Mackall, Crounse & Moore, Minneapolis, Minn., for defendants Preeshl, Helstad, Shoup & Co., Robert C. Shoup, Michael J. Bruder, Mary K. Glubka, and Earl Engelson.

David F. Herr, and Charles A. Hoffman, Maslon Edelman Borman & Brand, Minneapolis, Minn., for defendants Alfred Sannerud and A.M. Sannerud & Associates, Inc.[1]

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs brought these seven actions alleging that defendants fraudulently organized and promoted certain tax shelters. The complaint in each action asserts 18 causes of action, relying on the Securities Act of 1933, 15 U.S.C. § 77a et seq.; the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.; the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 et seq.; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–

---

1. The attorneys listed were seated at the counsel tables during the hearing. Other counsel also present in the courtroom were not identified on the record.

1968; the Minnesota Securities Act, Minn. Stat. § 80A.01 et seq.; other Minnesota statutory provisions; and state common law. Plaintiffs seek damages and allege jurisdiction pursuant to the federal statutes invoked in their claims, 28 U.S.C. § 1331, and pendent jurisdiction. Now before the court are motions for consolidation and "relation back" brought by a number of plaintiffs and motions to dismiss under Fed.R. Civ.P. 12(b)(6) brought by many of the defendants.

*Background*

These actions share a number of common elements. In each action, plaintiffs are Minnesota residents who allegedly invested money by entering into lease agreements with various defendants, believing that they would become entitled to substantial tax benefits and a return on their investment. Instead, plaintiffs allege, the property leased had minimal value and the Internal Revenue Service (IRS) may soon bring tax deficiency actions against plaintiffs. Defendants can be classified into two general categories: local defendants who allegedly promoted the shelter plans in Minnesota, who are parties in each action, and national defendants who allegedly promoted the plans throughout the country, who are parties only in actions related to

the tax shelter plans that they allegedly organized and promoted. Four of the actions concern the "Energy Brain" plan, while three concern the "Kiddie Klassics" plan.[2]

### A. The "Energy Brain" Plan

On November 29, 1985, plaintiffs W. Kent and Patricia Nielsen filed a suit asserting causes of action arising from their investment of $158,443.84 related to energy conservation equipment called Energy Brain units. Civ. 4–85–1600. The Nielsens allegedly leased this equipment from defendant Saxon Energy Corp. (Saxon)[3] on December 1, 1982, paying $79,000 at that time and the remaining balance on June 15, 1983. In addition, the Nielsens allegedly entered into service agreements with defendants Management Support Services (MSS) and ALH Energy Management Corporation (ALH).[4] Under the agreements, these defendants were to locate an end-user for the equipment.

On the basis of appraisals provided by Saxon,[5] plaintiffs took substantial credits and deductions on their state and federal income tax returns. Plaintiffs believe that defendant Saxon and other defendants misrepresented the actual value of the equip-

---

2. The Energy Brain cases are *Nielsen v. Professional Financial Management, Ltd.,* Civ. 4–85–1600; *Burns v. Professional Financial Management, Ltd.,* Civ. 4–85–1642; and *Benson v. Professional Financial Management, Ltd.,* Civ. 4–86–570 and 4–86–752. The Kiddie Klassics cases are *Burns v. Professional Financial Management, Ltd.,* Civ. 4–85–1643; and *Betz v. Professional Financial Management, Ltd.,* Civ. 4–86–571 and 4–86–672.

In addition to these seven actions, several other related actions have been brought in this district. *Walter Kent Nielsen v. Professional Financial Management, Ltd.,* Civ. 4–87–24, is a class action that concerns tax shelter leases of solar panel equipment. *Dean A. Rafferty v. Professional Financial Management, Ltd.,* Civ. 4–87–47 and 4–87–99, are class actions that concern a limited partnership which leased solar energy equipment.

3. Defendants James Conlon and Archibald Braunfeld are shareholders and officers of Saxon who were allegedly involved in these lease arrangements.

4. Defendant Kamal Fereg is allegedly a shareholder and officer of ALH who played a role in

the promotion and appraisal of Energy Brain units.

5. Defendants TMJ Associates Inc., Charles Taylor, and Peter E.Y. Wang allegedly assisted in providing false appraisals of the value of the equipment. Defendants Falk & Berman law firm and Kenneth Falk allegedly provided a tax opinion, concerning the Energy Brain lease investments, that was distributed by Saxon. Defendants Walter and Antmin CPAs and Murray Antmin allegedly served as accountants for Saxon. Defendants Bell Financial Group, Richard J. Bell, Sheldon Barr, and Barr & Bello law firm allegedly organized and promoted the Energy Brain plan on a nationwide basis. Defendant Enersonics allegedly manufactured the Energy Brain units.

On April 29, 1986, a New York state grand jury charged defendants Barr, Freedman, Fereg, Taylor, Leja, Saxon, Enersonics and ALH, in a 124–count indictment, with various offenses in connection with the promotion of the Energy Brain plan.

ment.[6] This misrepresentation, according to plaintiffs, prevented them from realizing a material return on their investment and may lead to the disallowance of the tax credits and deductions taken on that basis.

Plaintiffs also assert claims against a number of defendants located in Minnesota. Plaintiffs allege that defendant Professional Financial Management, Ltd. (PFM), a Minnesota corporation with its principal place of business in Minneapolis, was a "primary promoter and marketer of the Energy Brain scheme in Minnesota." According to plaintiffs, PFM advised them to invest in Energy Brain and serviced their account. Defendant J. Kmetz & Associates, a partnership of certified public accountants, was allegedly closely connected to PFM and prepared financial documents for investors in Energy Brain.[7] Defendant Olstead & Associates is an insurance agency that allegedly promoted Energy Brain. Defendants James Erwin Kmetz and Joseph Louis Kmetz are partners in J. Kmetz & Associates and are shareholders, directors, and officers of PFM. They allegedly made misrepresentations to plaintiffs about Energy Brain to encourage their investment. Defendant Cynthia Kmetz was an employee of PFM who allegedly promoted Energy Brain to plaintiffs. Finally, defendant Arthur Walter Olstead, a shareholder, director, and officer of PFM and the managing partner of Olstead & Associates, also allegedly promoted Energy Brain.

On December 12, 1985, plaintiff Franklin J. Burns filed an action asserting identical claims as the Nielsens against the same defendants. Civ. 4–85–1642. Burns al-

leged that he invested $15,191.62 in Energy Brain, paying $5,550 on December 29, 1982 and the remainder on June 15, 1983. The final two Energy Brain suits were filed on June 30, 1986 by Paul A. Benson and approximately 30 other plaintiffs who allege that they invested in Energy Brain "[b]eginning in December, 1982 and continuing up to the present." Civ. 4–86–570 and 4–86–752.[8] The complaint filed in *Benson* asserts the same 18 causes of action against virtually the same defendants.

In an order dated September 26, 1986, United States Magistrate Floyd E. Boline granted the motion of the Nielsen plaintiffs to amend their complaint.[9] The Nielsen plaintiffs subsequently amended their complaint on September 29, 1986 to add 32 other investors as plaintiffs (the "September plaintiffs") and 8 other defendants. The plaintiffs also allegedly entered into lease agreements in December 1982. The new defendants included two accounting firms, defendants Preeshl, Helstad, Shoup & Co. (PHS), and A.M. Sannerud & Associates, Inc., as well as a number of accountants who practiced at those firms.[10]

## B. *The "Kiddie Klassics" Plan*

On December 12, 1985, plaintiffs Franklin J. and Marian R. Burns filed an action asserting the same 18 causes of action as those in the Energy Brain cases, but related to their investment in a different tax shelter plan. Civ. No. 4–85–1643. Plaintiffs allege that on December 30, 1981, they entered into a lease agreement for "Kiddie Klassic" master recordings of children's songs, making an initial payment on that

---

**6.** Plaintiffs cite *United States v. Turner*, 601 F.Supp. 757, 767 (E.D.Wisc.1985), *aff'd sub nom. United States v. Smith*, 787 F.2d 595 (7th Cir. 1986), in which the court found that promoters of the Energy Brain plan had provided "gross valuation overstatements," thus promoting an "abusive tax shelter" in violation of 26 U.S.C. § 6700(a)(2)(B).

**7.** Defendant Cohler, Kmetz & Brown is allegedly a successor in interest to J. Kmetz & Associates.

**8.** Civ. 4–86–752 was originally filed in Hennepin County District Court and removed to this court.

Because it is otherwise identical to Civ. 4–86–570, the two cases will hereafter be considered as one and referred to as the *"Benson* action."

**9.** Magistrate Boline denied the Nielsens' motions to consolidate their action with *Burns* and for "relation back" to the date of the complaint's original filing, reserving those questions for this court. Those motions are now before the court.

**10.** The accountants are Robert C. Shoup, Michael J. Bruder, Mary K. Glubka, Alfred Sannerud, and Earl Engelson. Plaintiffs also added Leonard Freedman, the president of Enersonics, as a defendant.

date and a subsequent payment on June 2, 1982. Although plaintiffs expected to receive a return on their investment and substantial tax benefits, they allege that they have not received a material return and they may be penalized for the tax credits and deductions they have taken. Plaintiffs sued all of the Minnesota defendants originally joined in the Energy Brain cases and a different group of national defendants who allegedly organized or promoted the Kiddie Klassics plan in some way. These defendants include Structured Shelters Inc., Robert Iles, Monica Iles, Oxford Production Company, Phyllis Capp, Aim Record Distribution, Inc., Louis Merestein, Joseph Abend, Western Educational Systems Technology, Harold A. Landers, MPA Associates, Inc., MTA Associates, Inc., Michael L. Duncan, Al Landry, and American Family Entertainment Club.

On June 30, 1986, Charles W. Betz and approximately 25 other plaintiffs filed two suits virtually identical to the *Burns* Kiddie Klassics action. Civ. 4–86–571 and 4–86–672.[11] The *Betz* plaintiffs allege that they "invested substantial amounts of money in Kiddie Klassics from December of 1981 to the present."

### C. *The Motions Before the Court*

The *Nielsen* plaintiffs have moved to consolidate their case with the *Burns* and *Benson* Energy Brain actions for trial or, alternatively, to amend their complaint to include those plaintiffs and to "relate back" the date of the amendment to November 29, 1985, the date of their original filing. In addition, the *Nielsen* plaintiffs move to "relate back" the date of the amendment adding the 32 "September plaintiffs" to November 29, 1985. Plaintiffs in *Benson* move to consolidate their

action with the *Nielsen* and *Burns* Energy Brain actions, or, alternatively, to intervene and be added as additional plaintiffs in *Nielsen*. The *Betz* plaintiffs move to consolidate their action with the *Burns* Kiddie Klassics action, or, alternatively, to intervene and be added as plaintiffs in *Burns*.[12] Plaintiffs seek to prevent their claims from being time barred.

PFM and a number of other defendants moved to dismiss both the *Benson* and *Betz* actions, largely on statute of limitations grounds. Plaintiffs Nielsen and Burns sought to intervene in the consideration of those motions. The court denied the motion to intervene and ordered that all motions to dismiss based on any statute of limitations be brought in accordance with the local rules and set for hearing on the same day. Several additional defendants subsequently moved to dismiss on that basis. All of the motions to dismiss, along with plaintiffs' motions for consolidation and relation back, are now before the court.

### DISCUSSION

### A. *Motions for Consolidation and Relation Back*

In the Energy Brain cases, plaintiffs seek "relation back" to the November 29, 1985 filing of the *Nielsen* complaint for the "September plaintiffs" in *Nielsen*, for plaintiff Franklin Burns in Civ. 4–85–1642, and for the plaintiffs in *Benson*. The motion to relate back deals only with the Minnesota defendants and not the national promoters of the plan.[13]

Federal Rule of Civil Procedure 15(c) governs the relation back of amendments:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set

---

**11.** Civ. 4–86–672 was originally filed in Hennepin County District Court but was removed to this court. Because it is identical to Civ. 4–86–571, the two cases shall be treated as one and referred to as the *"Betz* action."

**12.** Plaintiffs in the *Benson* case also move to amend their complaint to add Jon Kinnard as plaintiff and plaintiffs in the *Betz* case move to amend their complaint to add Thomas and Warwick Tomfohr as plaintiffs.

**13.** Many of the national defendants were also named as defendants in a class action, *Roso v. Saxon Energy Corp.,* 85 Civ. 6131 (E.D.N.Y.), filed on June 21, 1985. Because they believe that they would be included in the alleged class, plaintiffs argue that the statutes of limitations have been tolled with respect to their claims against the national defendants.

forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Although the rule does not explicitly govern the relation back of amendments changing plaintiffs, the Advisory Committee Notes on the 1966 amendment to the rule state that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Here, plaintiff seeks relation back with respect to both added defendants and added plaintiffs.

With respect to the eight defendants added by the amended *Nielsen* complaint filed on September 29, 1986, plaintiffs admit that defendants PHS, A.M. Sannerud & Associates, Inc., and the employees of each accounting firm may not have had notice of plaintiffs' claims at the time of the filing of the original complaint. Accordingly, plaintiffs request that the court defer its ruling on relation back with respect to these defendants until plaintiffs have conducted further discovery.[14]

The Sannerud defendants and the PHS defendants oppose relation back. They allege that the original complaint did not include any of the investors with whom they dealt and that such investor plaintiffs were added only in the amended complaint. As a result, they argue that they were not put on notice of the claims by the filing of the original complaint.

■ Of the factors to be considered in determining whether an amendment adding a party should relate back, "[t]he linchpin is notice, and notice within the [statute of] limitations period." *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 2385, 91 L.Ed. 2d 18 (1986); *see also McCurry v. Allen,* 688 F.2d 581, 584–85 (8th Cir.1982); *Staren v. American National Bank & Trust Co.,* 529 F.2d 1257, 1263 (7th Cir.1976) ("[N]otice is the critical element involved in Rule 15(c) determinations."). Plaintiffs have made no showing that the added defendants had notice of the claims at the time the original complaint was filed, but they have not had the opportunity to take discovery on this issue. The motion for relation back with respect to the added defendants should therefore be denied.

The *Nielsen* plaintiffs also seek relation back for the "September plaintiffs" and for the *Benson* plaintiffs with respect to claims against the Minnesota defendants named in the original complaint. They argue that defendants had notice of the claims of the other plaintiffs prior to the filing of the original complaint. In support of this contention, plaintiffs point to a letter dated October 25, 1985, sent by defendant Arthur Olstead to an insurance company, advising of potential claims by investors, allegedly including those of the September and *Benson* plaintiffs.

In determining whether to allow relation back for added plaintiffs, courts often examine whether an "identity of interest" exists between the old and new plaintiffs. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1501, at 524 (1971). "The point of the courts' consideration of identity of interest is that that factor ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect 'involved in [the proceedings] unofficially from an early stage." *Leachman v. Beech Aircraft Corp.,* 694 F.2d 1301, 1309 (D.C.Cir.1982) (quoting 3 J. Moore, *Moore's Federal Practice*

---

**14.** Defendant Leonard Freedman, president of Enersonics, appears to be the only added defendant who does not fall into this category. Freedman, however, is a national defendant and thus is not targeted by plaintiffs' motion. The court therefore need not rule on the motion for relation back with respect to Freedman.

¶ 15.15[4.–1], at 15–160 (1985)). Defendants assert that there is no identity of interest here between the old and new plaintiffs, arguing that relation back on that basis has been allowed only where plaintiffs were all limited partners, family members, or otherwise closely related.

■ Although there is no close identity of interest between the individual investors here, the court nonetheless finds that the claims of the added plaintiffs should relate back to the filing date of the original complaint. Implicit in the "identity of interest" factor is a concern that the defendant "has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits...." Fed.R.Civ.P. 15(c). As the Supreme Court stated in *Schiavone v. Fortune*, "[t]he linchpin is notice...." 106 S.Ct. at 2385; *see also Stoppelman v. Owens*, 580 F.Supp. 944, 947 (D.D.C.1983) ("The purpose behind the statute of limitations, namely notice, is not defeated ... by permitting the amended complaint to relate back...."). Here, defendants had notice of the possible claims of the new plaintiffs, as shown by their contacting their insurer. Moreover, the original complaint noted that "Plaintiffs are one [sic] of several hundred Energy Brain investors nationwide and one [sic] of several investors in this district." Plaintiffs' motion for relation back to the November 29, 1985 filing date should be granted for the claims of the "September plaintiffs" in Civ. 4–85–1600, Franklin Burns in Civ. 4–85–1642, and all plaintiffs in the *Benson* action.

■ Plaintiffs' motion for consolidation of the Energy Brain cases and of the Kiddie Klassics cases under Fed.R.Civ.P. 42(a) should be denied, however. All cases are presently before this court, so the cases may be managed together. Although there are some common issues of fact and law, it is not clear at this time that fairness and efficiency would be promoted by consolidation of either group of cases for trial. With respect to the motions for intervention made by the plaintiffs in *Benson* and *Betz*, it is not apparent that intervention would be appropriate at this time.

### B. *Motions to Dismiss*

Many defendants have moved to dismiss all 18 causes of action brought by plaintiffs.[15] Because matters outside the pleadings have been presented to the court by both plaintiffs and defendants, the court treats the motions as motions for summary judgment. Fed.R.Civ.P. 12(c).

In passing upon a motion for summary judgment, the court must view the facts in the light most favorable to the opposing party. The movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Meyers v. Reagan*, 776 F.2d 241, 244 (8th Cir.1985); *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984). The opposing party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleading and affidavits. *Kresse v. Home Insurance Co.*, 765 F.2d 753, 754 (8th Cir.1985). The opponent may not merely rest upon allegations or denials of the pleadings, however, but must set forth specific facts, by affidavit or otherwise, showing that there is a question of fact for trial. *One Blue 1977 AMC Jeep v. United States*, 783 F.2d 759, 762 (8th Cir. 1986).

### 1. *Securities Act of 1933*

The first three counts of the complaint in each action[16] allege causes of action under Section 12 of the Securities Act of 1933. 15 U.S.C. § 77*l*. Count 1 asserts that the lease agreements entered into by plaintiffs constitute securities and that defendants

---

**15.** Not all of the motions treat all plaintiffs the same, however. The motions made by PFM and the Kmetz defendants seek to dismiss only counts 1–3, 5, 6, and 10 of those asserted by the original Nielsen plaintiffs in Civ. 4–85–1600 and by Franklin J. Burns in Civ. 4–85–1642. By contrast, these defendants move to dismiss all claims asserted by the other plaintiffs. The motions made by the remaining defendants also seek to dismiss all claims.

**16.** Because the complaints in each action assert the same 18 causes of action, they shall collectively be referred to as "the complaint."

failed to register the securities, in violation of Section 12*l*. Count 2 alleges that defendants' sales of these unregistered securities also constitute a violation of Section 12*l*. In Count 3, plaintiffs allege that defendants used the mails and telephone to publish false and misleading statements and omitted material facts in promoting the securities, in violation of Section 12(2).

Without conceding that the leases constitute securities, defendants argue that these claims are barred by the statute of limitations established in Section 13, 15 U.S.C. § 77m:

> No action shall be maintained to enforce any liability created under section 77k or 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l* (1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l* (1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l* (2) of this title more than three years after the sale.

The *Nielsen* plaintiffs concede that they cannot meet the one-year statute of limitations, but request that they be allowed to amend their complaint to plead that defendants engaged in fraudulent concealment of the cause of action from plaintiffs. In their view, such an amendment would allow them to meet the three-year outside limit on the statute of limitations.

■ Although Section 13 allows a Section 12(2) claim to be brought within one year of actual discovery of, or when discovery should have reasonably been made of, the untrue statement or omission, the "three year period provided in Section 13 is an absolute limitation." *Antinore v. Alexander & Alexander Services, Inc.*, 597 F.Supp. 1353, 1356 (D.Minn.1984); *see also Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1308 (9th Cir.1982) (no equitable tolling of three-year limit). Plaintiffs in *Nielsen* acknowledge this authority, but urge the court to rely on *In re Home-Stake Production Co. Securities Litigation*, 76 F.R.D. 337, 344–45 (N.D.Okla. 1975). *Home–Stake* held that even the three-year limit could be tolled by a defendant's fraudulent concealment, but it represents a minority position. *See* 3A H. Bloomenthal, *Securities and Federal Corporate Law* § 8.31[3][a], at 8–156.11 (1986) ("The sole exception to regarding the three-year period as absolute in the context of Section 12(2) is the *Homestake* [sic] case."). Moreover, "the doctrine of equitable tolling has no application [to a claim for failure to file a registration statement under Section 12(1) because] there is no concealment in this regard." H. Bloomenthal, *supra,* at 8–156.9. The weight of authority thus indicates the three-year period is absolute and not subject to equitable tolling. Any claim asserted more than three years after the security was offered or sold is necessarily barred.

■ Plaintiffs in the *Benson* and *Betz* cases argue that each payment made in connection with the tax shelters constitutes the sale of a security and that the statute of limitations on their Section 12(2) claims begins to run only after the final payments were made. The court cannot agree. The sale occurs, and the statute begins to run, at the time the plaintiff fixes his rights and obligations by executing the investment contract which is alleged to constitute the security. *Rochambeau v. Brent Exploration, Inc.*, 79 F.R.D. 381, 384 (D.Colo.1978). "Each [subsequent] payment represent[s] not the creation or assumption of new obligations, but the fulfillment of those previously created." *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1184 (S.D.N.Y.1974).[17]

---

[17]. Although *Ingenito* found periodic payments on maintenance contracts to constitute sales of securities, 376 F.Supp. at 1183, plaintiffs here have made no showing that payments were made on the management agreements during the three years preceding the filing of their actions. Affidavits submitted by plaintiffs indicate that they made payments to various defendants subsequent to the leases being entered, but many of these payments appear to be for servic-

Here, plaintiffs entered into long-term leases and signed promissory notes requiring one additional payment approximately six months later. Their rights and obligations became fixed when they entered into the leases. Accordingly, the three-year statute of limitations began to run on the dates on which the leases were entered.

■ The *Nielsen* action was filed on November 29, 1985, and the other Energy Brain actions relate back to that date. Because the leases were entered into in December 1982, the actions were filed within the three-year statute of limitations. The Section 12(1) claims, which assert that the securities were not registered, were not brought "within one year after the violation upon which it is based," however. The violation, if any, occurred when the securities were offered, which occurred in December 1982 or earlier. The motions to dismiss Counts 1 and 2 of the Energy Brain complaints should therefore be granted. By contrast, the motions to dismiss the Section 12(2) claims in Count 3 should be denied. Such claims need be brought within one year of the actual or constructive discovery of the untrue statement or omission. The application of this provision necessarily requires the resolution of disputed facts, thus preventing disposition on a motion for summary judgment. The Energy Brain plaintiffs may amend their complaints to plead compliance with the statute of limitations for Count 3.

All of the Kiddie Klassics cases involve leases entered into in December 1981. The cases were filed on December 12, 1985 and June 30, 1986. This means that all of the Section 12 claims in these actions were untimely filed more than three years after the sale of the securities. The motion to dismiss Counts 1–3 of the Kiddie Klassics complaints should therefore be granted.

### 2. *Securities Exchange Act of 1934*

Count 4 of the complaint alleges that defendants employed manipulative and deceptive devices in connection with the sale of unregistered securities, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. Defendants argue that the claim is barred by the statute of limitations.

■ The Securities Exchange Act of 1934 does not provide a statute of limitations for actions under Section 10(b). Courts therefore look to the most closely analogous state statute. *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). The parties agree that the three-year provision of the Minnesota Securities Act, Minn.Stat. § 80A.23(7), provides the appropriate statute of limitations for 10b–5 claims. *See Burns v. Ersek*, 591 F.Supp. 837, 839 (D.Minn.1984). Defendants argue that the three-year statute bars all 10b–5 claims except for those filed by the original *Nielsen* and *Burns* plaintiffs.

Although the equitable tolling doctrine is inapplicable to the statute of limitations in Section 13 of the Securities Act of 1933, "the almost universally accepted view [is] that the federal doctrine of equitable tolling is read into the borrowed statute of limitations with respect to claims arising under Rule 10b–5." 3A H. Bloomenthal, *Securities and Federal Corporate Law* § 8.31[3][c], at 8–156.16 (1986); *see also Harris v. Union Electric Co.*, 787 F.2d 355, 360 (8th Cir.) (application of equitable tolling doctrine to 10b–5 claims is "well established"), *cert. denied,* —— U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986). In holding that the state statute of limitations should be borrowed where the federal statute is silent, the Supreme Court set forth the federal doctrine of equitable tolling:

> [W]here a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

es such as the preparation of income tax returns.

*Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875)). In other words, "the limitations period is tolled until the fraud is discovered or, upon reasonable inquiry, when it should have been discovered." *Harris*, 787 F.2d at 360.

▮ Here, plaintiffs allege that defendants fraudulently concealed their misrepresentations from plaintiffs. According to plaintiffs, the Kmetz defendants were aware as early as January 1984, that the IRS was investigating Energy Brain as an abusive tax shelter. Nonetheless, plaintiffs allege, the Kmetz defendants continued to assure plaintiffs of the integrity of the investments. The IRS first advised the investors in the fall of 1985 that it intended to audit the Energy Brain investment. Plaintiffs argue that the statute of limitations did not begin until they discovered or should have discovered the fraud; their filings were therefore timely. Defendants admit that the federal equitable tolling doctrine applies to claims under 10b–5, but argue that plaintiffs have inadequately pled fraudulent concealment.

To be entitled to summary judgment on plaintiffs' 10b–5 claims, defendants must establish that there are no disputed issues of material fact. Reviewing the facts in the light most favorable to plaintiffs as it is required to do, the court finds that disputed issues of material fact remain concerning the issue of fraudulent concealment. Although plaintiffs' pleading on the issue is less than desirable,[18] summary judgment would be inappropriate. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1310 (9th Cir.1982) (factual issue regarding plaintiff's discovery of fraud made trial court's grant of summary judgment for defendant improper). Accordingly, defendants' motions to dismiss the 10b–5 claims should be denied.

### 3. *Investment Advisers Act of 1940*

▮ Count 5 alleges that defendants violated the Investment Advisers Act, 15 U.S.C. § 80b–6(1) and (2), by disseminating promotional material on the investment plans while operating a fraud on plaintiffs. As defendants point out, and plaintiffs concede, the Act provides "a limited private remedy ... to void an investment advisers contract, but ... confers no other private causes of action, legal or equitable." *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979) (footnote omitted). Because no such private cause of action exists, defendants' motion to dismiss count 5 should be granted.

### 4. *RICO*

Count 6 asserts that defendants engaged in a frequently repeated pattern of fraudulent conduct in connection with the sale of securities, in violation of 18 U.S.C. § 1962. "A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Plaintiffs allege that Energy Brain and Kiddie Klassics were "interstate network[s] of Defendants each with their separate functions" which "constituted ... enterprise[s] separate and distinct from [their] individual parts." Plaintiffs further allege that defendants committed mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, and securities fraud, and that these acts were "racketeering activity" under 18 U.S.C. § 1961(1). Finally, plaintiffs argue that the RICO action was timely filed because the Minnesota six-year statute of limitations for fraud, Minn. Stat. § 541.05(1)(6), should be applied to RICO claims in Minnesota.

Defendants move to dismiss the RICO claims on the ground that they were not filed within the three-year statute of limitations period of the Minnesota Securities

---

**18.** The complaints in the *Benson* and *Betz* cases do state that "Defendants continued to fraudulently conceal the sham so that the fraud was only recently discovered." In addition, affidavits of many of the plaintiffs indicate that defendants continued to provide assurances to plaintiffs that their investments were sound at a time when, according to plaintiffs, defendants knew differently.

Act, Minn.Stat. § 80A.23(7), which they argue applies to RICO claims in Minnesota. *Burns v. Ersek,* 591 F.Supp. 837, 843 (D.Minn.1984). Moreover, defendants argue that plaintiffs have failed in at least three ways to plead a RICO claim properly. First, defendants contend that plaintiffs have not properly pled the "pattern" element because they have not alleged that defendants engaged in more than one scheme to defraud. Second, defendants assert that plaintiffs have not properly pled the "enterprise" element insofar as the alleged "enterprise" is not distinct from the pattern of racketeering activity. Finally, according to defendants, plaintiffs have failed to plead the participation of defendants in the conduct of the enterprise.

The Court of Appeals has established a stringent standard for "associated in fact" RICO enterprises:

> We hold that Congress intended that the phrase "a group of individuals associated in fact although not a legal entity," as used in its definition of the term "enterprise" in Section 1961(4), to encompass only an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts constituting the "pattern of racketeering activity."

*United States v. Anderson,* 626 F.2d 1358, 1372 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *see also United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed. 2d 246 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."); *Superior*

*Oil Co. v. Fulmer,* 785 F.2d 252, 258 (8th Cir.1986) (quoting *Anderson* with approval).

Here, plaintiffs allege that the "Energy Brain" and "Kiddie Klassics" "enterprises" were interstate networks of defendants engaged in a chain of illegal promotion of securities. The pattern of racketeering alleged by plaintiffs is made up of largely unspecified acts of mail, wire, and securities fraud. Plaintiffs have not alleged, and appear unable to allege, that these "enterprises" have "an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts constituting the 'pattern of racketeering activity.' " [19] 626 F.2d at 1372. Because plaintiffs cannot meet the *Anderson* standard for RICO enterprises and because they have failed to plead the elements of any predicate offenses, defendants' motion to dismiss the RICO claims should be granted.[20]

A number of defendants move to dismiss the state claims for lack of jurisdiction if all federal claims are dismissed. Because the motions to dismiss all of plaintiffs' federal claims should be denied, the court retains pendent jurisdiction over plaintiffs' state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966).

### 5. *Minnesota Securities Act*

Count 7 of the complaint alleges that the lease agreements constitute securities and that defendants failed to register them, in violation of Minn.Stat. § 80A.08. Count 8 asserts that defendants committed securities fraud by making untrue statements in

---

**19.** Plaintiffs rely upon *In re Energy Systems Equipment Leasing Securities Litigation,* 642 F.Supp. 718, 739–42 (E.D.N.Y.1986), in which the court denied a motion to dismiss RICO claims in a similar factual setting. In *Anderson,* however, the Court of Appeals noted that its ruling was "in direct opposition to the views" of a number of circuits, including the second. 626 F.2d at 1372. *See also United States v. Mazzei,* 700 F.2d 85, 89 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983) (noting that Eighth Circuit's position on "dis-

tinctness" issue is "at odds" with that of Second Circuit). It is clear the standards are not the same in the two circuits.

**20.** Because of this ruling, it is not necessary to consider other alleged deficiencies in the RICO claims or the RICO statute of limitations. It is also questionable, however, whether plaintiffs have made out the "pattern" and "participation" elements.

connection with sales of securities and by engaging in a course of promotion to defraud plaintiffs, all in violation of Minn. Stat. § 80A.01. Finally, Count 9 alleges that defendants, as compensated investment advisers, defrauded plaintiffs and employed the various plans as schemes to defraud them, in violation of Minn.Stat. § 80A.02(1). Defendants move to dismiss these claims on the ground that they are time-barred.

▉ The statute of limitations for claims under the Minnesota Securities Act is set forth by Minn.Stat. § 80A.23(7):

No person may commence an action under subdivision 1 more than three years after the sale upon which such action is based. No person may commence an action under subdivision 2 more than three years after the occurrence of the act or transaction constituting the violation.

The doctrine of equitable tolling does not apply to plaintiffs' "failure to register" claim in Count 7. *Applebaum v. Ceres Land Co.*, 546 F.Supp. 17, 21 (D.Minn. 1981), *aff'd*, 687 F.2d 261 (8th Cir.1982). Although "§ 80A.01 is almost identical to Rule 10b–5," *Bailey v. Piper, Jaffray & Hopwood, Inc.*, 414 F.Supp. 475, 479 (D.Minn.1976) (footnote omitted), it is not clear that the doctrine of equitable tolling applies to claims under the provision as it does to claims under its federal counterpart. *See Hayden v. McDonald*, 742 F.2d 423, 437 (8th Cir.1984) (Minnesota precedent favors a "strict interpretation of the limitations period in section 80A.23(7)"); *Kopperud v. Agers*, 312 N.W.2d 443, 446 (Minn.1981) (strictly construing statute of limitations under prior Minnesota securities law). In view of this background of strict construction of the statute and plaintiffs' failure to provide any contrary authority, equitable tolling should not be applied to the Minnesota securities statute of limitations.

Plaintiffs still contend that their actions were timely because they were filed within three years of their final payments, which, they allege, constitute "sales" under the statute. As discussed above, however, the sales of the securities occurred at the time at which the leases were entered. Accordingly, the Energy Brain claims were filed within the statute of limitations, and the motions to dismiss Counts 7, 8 and 9 of those complaints should be denied. The Kiddie Klassics claims, however, were filed more than three years after the sale of the securities, and the motions to dismiss Counts 7, 8 and 9 of those complaints should be granted.

### 6. *Minnesota Abusive Tax Shelter Statute*

▉ Minn.Stat. § 290.53(9) provides that any person who promotes "abusive tax shelters" shall pay a penalty to the Minnesota Commissioner of Revenue. In Count 10, plaintiffs attempt to assert an implied private right of action under this statute on the ground that it was enacted to protect a particular class of persons, to which they belong. Although Minnesota courts have apparently never recognized such an implied private cause of action, plaintiffs argue that Minnesota has an "extremely liberal attitude" in implying causes of action. Plaintiffs also argue that this cause of action was timely filed because, in their view, the six-year statute of limitations for negligence per se actions applies here. Minn.Stat. § 541.05.

Without conceding that an implied private cause of action exists under the statute, defendants argue that the cause of action is time-barred under the two-year statute of limitations for penalties. Minn. Stat. § 541.07(2). According to defendants, any representations concerning tax benefits from the transactions would have been made only when the original agreements were entered into.

Although Minn.Stat. § 290.53(9) may have been intended to protect parties like plaintiffs, "the mere fact that the statute was designed to protect [parties such as plaintiffs here] does not require the implication of a private cause of action for damages on their behalf. The dispositive question remains whether [the legislature] intended to create any such remedy." *Transamerica Mortgage Advisors, Inc.*

*(TAMA) v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979) (citations omitted).

The statute itself does not provide in any way for private causes of action. Instead, the statute authorizes the Commissioner of Revenue to bring an action for the imposition of a penalty, and Minn.Stat. § 290.522 authorizes the Minnesota Attorney General to bring a civil action for injunctive relief, at the request of the Commissioner of Revenue, against the promoters of abusive tax shelters. Without any showing of legislative intent to create a private remedy, a private cause of action should not be implied. Accordingly, the motions of defendants to dismiss Count 10 of the complaints in all of the Energy Brain and Kiddie Klassics cases should be granted.

### 7. *Remaining State Claims*

Counts 11–18 of the complaint assert causes of action under Minnesota statutes governing deceptive trade practices, Minn. Stat. § 325D.44; false advertising, Minn. Stat. § 325F.67; consumer fraud, Minn. Stat. § 325F.69(1); and punitive damages, Minn.Stat. § 549.20; as well as common law actions for fraud, malpractice or negligence, breach of contract, and unjust enrichment. The defendants who have moved to dismiss these claims have provided little or no briefing with respect to them, relying largely on the lack of subject matter jurisdiction if the federal claims were to be dismissed. The motions to dismiss these claims should therefore be denied at this time.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. In Civ. 4–86–570 and 4–86–752, the motion of plaintiffs to consolidate the Energy Brain actions or, alternatively, to intervene in *Nielsen v. Professional Financial Management, Ltd.,* Civ. 4–85–1600, is denied.

2. In Civ. 4–86–571 and 4–86–672, the motion of plaintiffs to consolidate the Kiddie Klassics actions or, alternatively, to in-

tervene in *Burns v. Professional Financial Management, Ltd.,* Civ. 4–85–1643, is denied.

3. The motions of plaintiffs in *Benson v. Professional Financial Management, Ltd.,* Civ. 4–86–570 and 4–86–752, and *Betz v. Professional Financial Management, Ltd.,* Civ. 4–86–571 and 4–86–672, to amend their complaints to add Jon Kinnard and Thomas and Warwick Tomfohr as plaintiffs, respectively, are granted.

4. In Civ. 4–85–1600, plaintiffs' motion to amend the complaint to include the plaintiff in *Burns v. Professional Financial Management, Ltd.,* Civ. 4–85–1642, is granted, and the amendment shall relate back to November 29, 1985. Plaintiffs' motion to amend the complaint to add the plaintiffs in *Benson v. Professional Financial Management, Ltd.,* Civ. 4–86–570 and 4–86–752, is granted, and the amendment shall relate back to November 29, 1985. The claims of the plaintiffs added by the first amended complaint shall also relate back to November 29, 1985. The motion of plaintiffs for relation back with respect to the defendants added by the first amended complaint is denied.

5. In Civ. 4–85–1600, the motions to dismiss made by defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Cohler Kmetz & Brown, Ltd., Olstead & Associates, Inc., Joseph Louis Kmetz, James Erwin Kmetz, Cynthia Jo Kmetz, Arthur Walter Olstead, Murray Antmin, Walter and Antmin CPAs, Richard J. Bell, and Bell Financial Group are granted with respect to Counts 1, 2, 5, 6, and 10, and those claims are dismissed. In all other respects, the motions are denied. The motions to dismiss made by defendants Alfred Sannerud, A.M. Sannerud & Associates, Inc., Preeshl, Helstad, Shoup & Co., Robert C. Shoup, Michael J. Bruder, Mary R. Glubka, and Earl Engelson are granted with respect to Counts 1, 2, 5, 6, and 10, and those claims are dismissed. In all other respects, the motions are denied pending further discovery.

6. In Civ. 4–85–1642, the motions to dismiss made by defendants Professional Fi-

nancial Management, Ltd., J. Kmetz & Associates, Cohler Kmetz & Brown, Ltd., Olstead & Associates, Inc., Joseph Louis Kmetz, James Erwin Kmetz, Cynthia Jo Kmetz, Arthur Walter Olstead, Murray Antmin, Walter and Antmin CPAs, Richard J. Bell, and Bell Financial Group are granted with respect to Counts 1, 2, 5, 6, and 10, and those claims are dismissed. In all other respects, the motions are denied.

7. In Civ. 4–85–1643, the motions to dismiss made by defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Cohler Kmetz & Brown, Ltd., Olstead & Associates, Inc., Joseph Louis Kmetz, James Erwin Kmetz, Cynthia Jo Kmetz, and Arthur Walter Olstead are granted with respect to Counts 1, 2, 3, 5, 6, 7, 8, 9, and 10, and those claims are dismissed. In all other respects, the motions are denied.

8. In Civ. 4–86–570 and 4–86–752, the motions to dismiss made by defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Cohler Kmetz & Brown, Ltd., Olstead & Associates, Inc., Joseph Louis Kmetz, James Erwin Kmetz, Cynthia Jo Kmetz, Arthur Walter Olstead, Murray Antmin, and Walter and Antmin CPAs are granted with respect to Counts 1, 2, 5, 6, and 10, and those claims are dismissed. Additionally, in Civ. 4–86–752, the motion to dismiss made by defendants Richard J. Bell and Bell Financial Group are granted with respect to Counts 1, 2, 5, 6, and 10. In all other respects, the motions are denied.

9. In Civ. 4–86–571 and 4–86–672, the motions to dismiss made by defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Cohler Kmetz & Brown, Ltd., Olstead & Associates, Inc., Joseph Louis Kmetz, James Erwin Kmetz, Cynthia Jo Kmetz, and Arthur Walter Olstead are granted with respect to Counts 1, 2, 3, 5, 6, 7, 8, 9, and 10, and those claims are dismissed. In all other respects, the motions are denied.

10. Plaintiffs shall have 14 days from the date of this order in which to show good cause why service has not been made on all defendants. If good cause is not shown or service not made by that date, the claims against unserved defendants shall be dismissed pursuant to Fed.R.Civ.P. 4(j).

11. There are now ten related actions before this court, involving more than 70 plaintiffs and approximately 50 defendants. Management of these actions would be facilitated by the designation of lead counsel for plaintiffs and for defendants to assist in communication with the court and the organization of procedures and issues. Accordingly, all counsel for plaintiffs and for defendants shall confer and then submit nominations for lead counsel in letters to the court; letters shall be submitted by May 1. Counsel may also wish to address other case management issues in their letters.