**In re PROFESSIONAL FINANCIAL MANAGEMENT, LTD.—Master Docket.**

**Civ. No. 4–85–1600.**

United States District Court, D. Minnesota, Fourth Division.

Jan. 19, 1989.

Jeff Ross and Richard I. Diamond, Estes, Parsinen & Levy, and Alonzo B. Seran, Olson, Gunn & Seran, Minneapolis, Minn., for plaintiffs.

Richard G. Wilson, Maslon Edelman Borman & Brand, Minneapolis, Minn., for defendants Preeshl, Helstad Shoup & Co., Michael J. Bruder, Robert Shoup, Mary Glubka and Earl Engelson.

Thomas J. Shroyer and Beth M. Timm, Moss & Barnett, Minneapolis, Minn., for defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Joseph Kmetz, and James Kmetz.

Wade R. Wacholz, Gislason, Dosland, Hunter & Malecki, Minnetonka, Minn., for defendants Arthur Olstead and Olstead & Associates.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

### I. Background

The general background of this complex litigation is set forth in the court's April 15, 1987 Memorandum Opinion and Order in *Nielsen v. Professional Financial Management, Ltd.*, 682 F.Supp. 429 (D.Minn.1987). Plaintiffs' claims in *Nielsen* relate to the "Energy Brain" leasing and tax shelter plan. Now before the court are several motions. The PHS defendants [1] seek partial summary judgment against the Winona plaintiffs [2] on two counts. They contend that the remaining federal securities claims asserted against them, counts III and IV, should be dismissed with prejudice, and that the pendent state claims should be dismissed for lack of jurisdiction. The Winona plaintiffs seek summary judgment against the PFM and PHS defendants on two state law claims. They claim that summary judgment should be entered in their favor on count VII, the Minnesota Securities Act, Minn.Stat. § 80A.23; and count XIII, the Minnesota Consumer Fraud Act, Minn.Stat. § 325F.69.[3]

Many of the background facts regarding the PHS defendants and the Winona plaintiffs are undisputed. PHS is an accounting firm with an office in Winona, Minnesota. Its first contact with the Energy Brain program occurred approximately in November, 1982, when plaintiff David Culver and defendant Michael Bruder attended a presentation of the Energy Brain program in Minneapolis, conducted by PFM. In December 1982, PHS invited PFM to Winona to present the Energy Brain program at a meeting organized by PHS. PHS invited many of its local clients to the presentation and prepared individual tax projections for the invitees. These projections analyzed each person's financial and tax status and described the tax advantages which would accrue to each person if he or she invested

1. The PHS defendants are the accounting firm of Preeshl, Helstad Shoup & Co., and its principals and employees Michael J. Bruder, Robert Shoup, Mary Glubka and Earl Engelson (the PHS defendants).

2. The Winona plaintiffs are identified in paragraph 13(a) of the second amended complaint. They are: Alan Nelson, Donald Bauer, Duane Speed, Fred R. Bauer, John Beard, John Bengfort, John Woodworth, David Culver, Pat K. Woodworth, Peter Woodworth, Philip Feiten, Richard Horst, Dr. H. Robert Woolley, Nancy C. Woolley, Frances Zeches, Anthony Fischer, Richard Thompson and Judy Thompson (the Winona plaintiffs).

3. The motions of plaintiffs and defendants were briefed and argued separately. Since they involve many of the same facts and parties it makes sense to address them in the same opinion.

in an Energy Brain before the end of 1982. Several of the people who attended this presentation decided to invest; most of the Winona plaintiffs are among this group. Many were assisted by PHS in completing the lease documents and in reviewing the offering material. The extent of PHS's participation is disputed. Plaintiffs portray PHS as an aggressive promoter of the program, and allege that it received payments from PFM for its efforts which constituted more than merely providing accounting and tax advice. The PHS defendants contend that their activities were limited to professional accounting services and that their fees were only for those services. They acknowledge, however, that the amounts PHS billed in relation to the Energy Brain exceeded its normal fees.

Each of the Winona plaintiffs invested in an Energy Brain by executing a lease before the end of 1982. The allegations against the PHS defendants were made on September 24, 1986 when plaintiffs W. Kent and Patricia Nielsen filed an amended complaint naming the PHS defendants as additional parties.

## II.  § 12(2) of the Securities Act of 1933

■ Count III of the second amended complaint alleges that defendants violated § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) by promoting securities through false and misleading facts. The PHS defendants urge that this claim be dismissed as untimely since it was not filed within three years of the date when the security was sold.

Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m requires that § 12(2) claims be brought within one year of discovery of the untrue statement upon which the claim is made, or in no event more than three years after the sale of the security.[4] The parties focus on the three year absolute limit. They agree that each of the Winona plaintiffs received title to their Energy Brain unit before the end of December 1982, and that that constituted the date of "sale" of the security. *See Appelbaum v. Ceres Land Co.*, 687 F.2d 261, 263 (8th Cir.1982) (limitations period begins when investment is completed and there is transfer of interest). Plaintiffs acknowledge that the amended complaint which first named the PHS defendants was filed more than three years after the date of sale. They argue, however, that their claims against the PHS defendants should relate back to the date they filed the initial complaint against PFM, pursuant to Fed.R.Civ. P. 15(c). They claim that their claim was therefore timely brought.[5]

The court has previously addressed the relation back of causes of action asserted against the PHS defendants. *See Nielsen v. Professional Financial Management*, 682 F.Supp. 429, 435–36 (D.Minn.1987). The court noted that "in determining whether an amendment adding a party should relate back, the linchpin is notice, and notice within the statute of limitations period." *Id.* at 435, *quoting Schiavone v.*

**4.** No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale. 15 U.S.C. § 77m.

**5.** Fed.R.Civ.P. 15(c) states in part:
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 Fed.R.Civ.P. 15(c).

*Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Plaintiffs at that time had made no showing that the PHS defendants had notice of claims against them when the original complaint was filed, but further discovery was permitted on that issue. 682 F.Supp. at 435.

Extensive discovery has now been conducted. Plaintiffs point to the deposition of Robert Shoup, a defendant and former PHS officer, as evidence that PHS defendants knew of claims against them within three years of the sale. Shoup testified that he became aware of the lawsuit filed against PFM sometime, "[probably] in 1985 ... before [he] retired." Shoup deposition, p. 229. Plaintiffs premise their entire claim for relation back on this statement. Shoup's comment is not sufficient, however, to allow relation back under Rule 15(c).

The mere fact that a PHS officer knew that PFM was being sued by plaintiffs other than the Winona plaintiffs does not give reasonable notice of claims against PHS. Moreover, before relation back is permitted, plaintiffs must also show that the failure earlier to include PHS defendants was due to "a mistake concerning the identity of the proper party." Fed.R.Civ.P. 15(c). *See McCurry v. Allen,* 688 F.2d 581, 585 (8th Cir.1982). Plaintiffs have made no such showing. Relation back of plaintiffs' § 12(2) claims against the PHS defendants should not be allowed in these circumstances, and the PHS defendants' motion to dismiss the § 12(2) claims against them should be granted.

III. Section 10(b) of the Securities Act of 1934, and Rule 10b–5

Count IV of the second amended complaint alleges that defendants engaged in manipulative and deceptive practices in regard to the Energy Brain and thereby violated § 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), (§ 10(b)), and Rule 10b–5 promulgated thereunder. 17 C.F.R. § 240.10b–5 (Rule 10b–5). The PHS defendants seek dismissal of that count against them on three grounds. They argue first that the court should adopt a different limitations period for § 10(b) and Rule 10b–5 claims and dismiss count IV as untimely. Second, they claim that the § 10(b) and 10b–5 claim asserted against the PHS defendants should not be equitably tolled and is thus time-barred. Third, they seek dismissal on the grounds that plaintiffs have failed to make any reasonable showing that defendants acted with scienter.

A. *Statute of Limitations for 10b–5 Claims in Minnesota*

■ The court has previously ruled that the three-year statute of limitations in Minn.Stat. § 80A.23 subd. 7 applies to the § 10(b) and Rule 10b–5 claims in this case. 682 F.Supp. at 438. Defendants now argue that this ruling should be changed in light of *Agency Holding Corp. v. Malley–Duff Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

*Agency Holding Corp. v. Malley–Duff* discussed the statute of limitations which should apply to claims brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (RICO). Like § 10(b) and Rule 10b–5, the RICO statute does not specify any limitations period applicable to private actions, and the practice had been to adopt the limitations period from the most analogous state statute in which the action arose. In *Agency Holding Corp. v. Malley–Duff* that rule was changed for civil RICO claims, and the limitations period which now applies is borrowed from the Clayton Act, 15 U.S.C. § 15. *Id.* 107 S.Ct. at 2764. Defendants urge this court to make a similar ruling for the Rule 10b–5 claim. They urge that the "better" limitations period for claims under § 10(b) and Rule 10b–5 is the absolute three year limit contained in § 13 of the Securities Act of 1933.[6] *Accord In re Data Access Systems Securities Litigation,* 843 F.2d 1537, 1550 (3d Cir.), *cert.*

---

**6.** Defendants apparently believe that the absolute three year limitations period in § 13 would be more advantageous for them. It might, for instance, preclude the application of equitable tolling.

*denied,* —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

The position urged by defendants should not be adopted, however. It would upset the well-settled rule in this circuit that the limitations period for § 10(b) and Rule 10b–5 claims is borrowed from the most analogous state statute. *Vanderboom v. Sexton,* 422 F.2d 1233, 1237–38 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *see also TCF Banking and Savings F.A. v. Arthur Young & Co.,* 697 F.Supp. 362 (D.Minn.1988) (continue applying statute of limitations from Minn. Stat. § 80A.23 subd. 7 for Rule 10b–5 claims arising in Minnesota). The reasoning stated in *Agency Holding Corp. v. Malley–Duff* does not compel the same outcome for § 10(b) and Rule 10b–5 claims as for those under RICO. *See Agency Holding Corp. v. Malley–Duff,* 107 S.Ct. at 2764 (borrowing federal limitations period for RICO is narrow exception to general rule). Plaintiffs' claims under § 10(b) and Rule 10b–5 will therefore continue to be governed by the limitations period stated in the Minnesota statute.

### B. *Equitable Tolling*

Minn.Stat. § 80A.23 subd. 7 requires that actions arising from the sale of a security be commenced within three years of the date of sale of the security.[7] As has been noted, the action against the PHS defendants was brought more than three years after the Winona plaintiffs received title to the Energy Brain leases. Plaintiffs contend that their § 10(b) and Rule 10b–5 claim against the PHS defendants is nonetheless timely because the statute of limitations should be tolled under the federal equitable tolling doctrine.

The court has addressed the federal equitable tolling doctrine in relation to the PFM defendants' motion to dismiss the Nielsen plaintiffs' § 10(b) and Rule 10b–5 claim. *See* 682 F.Supp. at 438. The court noted that "the federal doctrine of eq-

uitable tolling is read into the borrowed statute of limitations with respect to claims arising under Rule 10b–5." *Id.* When fraud is alleged in the underlying transaction which gives rise to the 10b–5 claim, "the limitations period is tolled until the fraud is discovered or, upon reasonable inquiry, when it should have been discovered." *Id.* at 439, *quoting Harris v. Union Electric Co.,* 787 F.2d 355, 3560 (8th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986); *see Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

The Winona plaintiffs have the burden of proving that they are entitled to equitable tolling. *Cook v. Avien,* 573 F.2d 685, 695 (1st Cir.1978) (Lay, C.J., Eighth Circuit sitting by designation). On defendants' motion for summary judgment, plaintiffs must show that here is a reasonable factual dispute regarding when they should have discovered the fraud, sufficient to preclude judgment for defendants. Fed.R. Civ.P. 56(c); *see Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Plaintiffs should be able to proceed with their theory of equitable tolling if there is a reasonable factual dispute as to whether fraud existed in the underlying transaction and they had actual knowledge of fraud or used reasonable diligence. *See* 682 F.Supp. at 439. All material facts and inferences are construed in favor of plaintiffs as the non-moving parties. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987).

The court previously ruled that fraudulent concealment is sufficiently pled in the complaint to permit the equitable tolling claim to go forward. *See* 682 F.Supp. at 439. The PHS defendants now contend that the Winona plaintiffs have failed to bring forth factual support for their assertion that in the exercise of reasonable diligence they could not have discovered the fraud in 1983. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith,* 644 F.2d 690 (8th Cir.

---

**7.** No person may commence an action under subdivision 1 [illegal sale of security] more than three years after the sale upon which such action is based....

Minn.Stat. § 80A.23 subd. 7.

1981) (limitations period tolled while plaintiff could not have discovered fraud in exercise of reasonable diligence). Defendants argue that any reasonable plaintiff should have suspected fraud in 1983 based upon correspondence with Kamal Fereg, a national defendant. According to the PHS defendants, Fereg supplied a purportedly independent appraisal of the Energy Brain valuations which was included in the promotional materials. He later corresponded with plaintiffs in his capacity as president of ALH, one of the principal Energy Brain service companies. Defendants contend that because Fereg dealt with plaintiffs in both capacities, they should have suspected his lack of independence and the possibility of fraud.

Plaintiffs respond with affidavits and deposition testimony stating that they reasonably failed to suspect fraud until 1985. They claim they did not closely scrutinize all the written material and relied on defendants' assurances that the Energy Brain program was sound.

■ The record is sufficient to show that there are reasonably disputed facts regarding plaintiffs' diligence. Another circumstance mitigating against summary judgment in favor of the PHS defendants is their claim that they themselves did not suspect any improprieties by the national defendants until 1985. The PHS defendants had equal or better access to information from the national defendants than did the Winona plaintiffs. They received correspondence from Fereg and reviewed the promotional material and were in an equal or better position to uncover any fraud. Because of disputed facts, the decision whether the Winona plaintiffs are entitled to equitable tolling of the statute of limitations on their § 10(b) and Rule 10b–5 claim should be reserved for the trier of fact.

### C. *Scienter*

A plaintiff who asserts a claim under § 10(b) or Rule 10b–5 must prove that the defendant acted with "scienter [which is] a mental state embracing an intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.

12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). The PHS defendants allege that the Winona plaintiffs have failed to provide factual support that the PHS defendants engaged in any intentionally fraudulent conduct. They point to their own investment in an Energy Brain and the losses they suffered as proof of their innocence of any intent to deceive. Plaintiffs respond that defendants' liability under § 10(b) and Rule 10b–5 can be established based on evidence of recklessness alone, without proving overt acts of intentional fraud.

■ The degree of scienter necessary in this circuit to prove liability under § 10(b) and Rule 10b–5 is that the defendants' conduct must be "other than in good faith." *Stokes v. Lokken*, 644 F.2d 779, 784, (8th Cir.1981), *quoting Ernst & Ernst v. Hochfelder*, 425 U.S. at 206, 96 S.Ct. at 1387. Proof of reckless conduct alone is not enough to sustain a Rule 10b–5 claim. *Id.* The claim that the PHS defendants exhibited a lack of good faith is an inherently factual matter and is best reserved for the trier of fact. Plaintiffs have presented enough evidence to create inferences in their favor that the PHS defendants acted other than in good faith and the best interests of their clients in handling the Energy Brain matters. The PHS defendants' motion for summary judgment on the § 10(b) and Rule 10b–5 claim should be denied.

### D. *Pendent Claims*

■ Defendants seek dismissal of the pendent state claims without prejudice. They contend that the state law claims are not sufficiently related to the federal claims which provide the basis for federal jurisdiction. *Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970) (court may dismiss pendent state claims based on judicial economy, convenience and fairness to the litigants). The § 10(b) and Rule 10b–5 claim is still pending against the PHS defendants, however. Most of the state claims derive from facts in common with the federal claim, and concerns for fairness and judicial economy do not compel dismissal of the state claims at this time. The PHS defendants' motion to

dismiss the pendent state claims should be denied.

## IV. Count VII—The Minnesota Securities Act, Minn.Stat. § 80A.01 et seq.

The Winona plaintiffs seek summary judgment against the PFM and PHS defendants on count VII.[8] That count alleges violation of Minn.Stat. § 80A.23 for sale of unregistered securities. The Winona plaintiffs contend that each of the PFM and PHS defendants has primary liability for selling the Energy Brain units which were not registered as securities. Plaintiffs also claim that each PFM and PHS defendant is jointly and severally liable for plaintiffs' losses under the controlling person provision of Minn.Stat. § 80A.23 Subd. 3.[9] *Cf. Commerford v. Olson,* 794 F.2d 1319, 1322–23 (8th Cir.1986) (extend federal controlling person liability to all participants when the misrepresentations are widespread and defendants' interests are interrelated).

The PFM and PHS defendants take differing positions in opposition to the Winona plaintiffs' motion. The PFM defendants (except Arthur Olstead, and Olstead & Associates) concede that they are "sellers" of the Energy Brain leases under the definition stated in *Pinter v. Dahl,* —— U.S. ——, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). *See In re Professional Financial Management, Ltd.,* 692 F.Supp. 1057, 1063

(D.Minn.1988) (seller includes those in privity with purchaser or who played a substantial role in the buy-sell transaction and derived a profit from the sale). They urge the court to reconsider whether the Energy Brain leases are securities, however.[10] They also raise the defense of due diligence.

The PHS defendants vigorously deny that they are sellers of securities. They also urge in their memoranda that the § 80A.23 claim against them is untimely and should be dismissed. No motion has been filed by them to dismiss count VII, however.[11]

Each of the defendants also objects to plaintiffs' assertions of "controlling person" liability under § 80A.23 subd. 3, since that claim was not raised in the complaints. They also contend that no joint and several secondary liability may be imposed without a finding that one party is primarily liable and that the other defendants acted as its agents. *Cf. Kasner v. Gage,* 281 Minn. 149, 161 N.W.2d 40, 42–43 (1968) (no liability to master for unauthorized conduct of agent).

■ Arthur Olstead and Olstead & Associates urge that they should not be "lumped together" with the other PFM defendants. They claim they were involved only in insurance matters and had no direct part in soliciting plaintiffs and the sale of the Energy Brain leases. *Pinter,* 108 S.Ct.

---

8. For ease of reference, the term "PFM defendants" includes Arthur Olstead and Olstead & Associates—except where their positions are separately noted.

9. Every person who directly or indirectly controls a person liable under subdivision 1 or 2, every partner, principal executive officer or director of such person, every person occupying a similar status or performing a similar function, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person. There is contribution as in cases of contract among the several persons so liable. Minn.Stat. § 80A.23 Subd. 3.

10. The court has previously ruled that the Energy Brain leases are securities for purposes of

§ 12(2) and Minn.Stat. § 80A.08. *See In re Professional Financial Management, Ltd.,* 692 F.Supp. at 1063–65 (D.Minn.1988).

11. The § 80A.23 claim stated against the PHS defendants in count VII would seem subject to dismissal since the action against them was commenced more than three years after they took title to the Energy Brain leases. The court has noted that claims made under Minn.Stat. § 80A.23 subd. 7 are subject to a strict three-year statute of limitations, which is not subject to equitable tolling. 682 F.Supp. at 441. Nor should relation back of the claim be permitted under Fed.R.Civ.P. 15(c) for the reasons stated *supra* at 6.

Plaintiffs now assert that the § 80A.23 subd. 7 claims are equitable in nature and therefore subject to a six-year statute of limitations. Minn.Stat. § 541.05 subd. 2. They do not elaborate on this novel theory, however, or provide any case support.

at 2076–80 (no seller liability for persons without direct involvement in sale); *Anders v. Dakota Land and Development Co., Inc.,* 380 N.W.2d 862, 868 (Minn.App. 1986) (Minnesota looks to federal law as "useful guide" in defining seller of securities). Arthur Olstead was one of three officers in Professional Financial Management, however, and cannot dismiss his role in the investment scheme merely by claiming ignorance of his partners' affairs. On the present record it is difficult to assess the role that Arthur Olstead and Olstead & Associates had in the Energy Brain matters, but there is enough evidence of their participation to prevent dismissal of claims against them. PFM's initial contact with the Winona plaintiffs occurred through one of Olstead's clients. Olstead apparently attended and participated at some of the promotional meetings. On the other hand, plaintiffs have not presented much evidence of the precise role of Olstead and Olstead & Associates. The record is not sufficient to determine beyond dispute that they are "sellers" or to warrant summary judgment in plaintiffs' favor on this § 80A.23 subd. 7 claim.

The PFM defendants other than Arthur Olstead and Olstead & Associates urge the court to reverse its determination that the Energy Brain leases are securities.[12] That issue was discussed at length previously, however, and need not be developed at this time. 692 F.Supp. at 1059–62. The Energy Brain leases are securities for purposes of Minn.Stat. § 80A.23 subd. 7.

█ The PFM defendants also argue that plaintiffs' motion for summary judgment on count VII should be denied because there are factual disputes regarding the adequacy of the PFM defendants' due diligence. The "due diligence" defense arises from Minn.Stat. § 80A.23 subd. 4 which provides that:

No person shall be liable under subdivisions 1 to 3 who shall sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of *facts by reason of which the liability is alleged to exist.*

*Id.* (emphasis added). The PFM defendants contend that the facts unknown to them by which liability is alleged to exist are that the Energy Brain leases are securities. The PFM defendants apparently contend that in the exercise of reasonable diligence they could not have known that the Energy Brain program was a "common enterprise" and that plaintiffs' "profits would be derived solely from the efforts of others." *See Securities and Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (four-part test for determining whether investment contract is a security). The PFM defendants contend that they retained a consultant who conducted due diligence and that he did not discover or report that the national defendants were interrelated. They claim that they were reasonable in relying on the consultant's representations. Defendants also point to legal advice they received which suggested that the Energy Brain leases were not securities.

Plaintiffs vigorously dispute all assertions that due diligence was conducted and that the PFM defendants should be relieved of liability. They claim that the legal opinion offered to PFM was equivocal and that the investigation conducted by the consultant was superficial and unreliable.

Voluminous materials have been submitted by the parties on the extent and reasonableness of PFM's due diligence. Plaintiffs' assertions may ultimately be born out, but at this time there is a disputed factual issue. On the present record it is uncertain whether the PFM defendants are entitled to the due diligence shield provided by Minn.Stat. § 80A.23 subd. 4; that issue must be reserved for the jury.

V. Count XIII: The Minnesota Consumer Fraud Act, Minn.Stat. § 325F.69

The Minnesota Consumer Fraud Act prohibits:

---

12. The PFM defendants cite *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.,* 840 F.2d 236 (4th Cir.1988) (Powell, Associate Justice, (retired) sitting by designation) (interests in a partnership which operated fishing vessels were not securities because each partner participated actively in managing the operation).

The act, use or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise....

Minn.Stat. § 325F.69 subd. 1. Private damage actions are permitted to remedy violations of § 325F.69. Minn.Stat. § 8.31 subd. 3a. (1974). The parties agree that securities and investment contracts constitute merchandise for purposes of § 325F.69. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728 (Minn.1983). They disagree, however, on the level of culpability necessary to state a claim under the Act.

The Winona plaintiffs contend that they do not need to prove any intent to deceive by the defendants. They claim that the misstated valuations of Energy Brain units, which were forwarded to them by the PFM and PHS defendants in promotional material, constitute misrepresentations under the Act. They contend that they are entitled to summary judgment on the issue of liability on that basis alone.

Each of the defendants disagrees, although their reasons vary. The PFM defendants assert that proof of some degree of culpability on their part is required before liability may be imposed. They claim that the Winona plaintiffs have not proved any failure to use due care on the part of the PFM defendants, and have failed to prove that plaintiffs relied on the alleged misrepresentations. They also claim that their due diligence defense prevents any determination on liability short of trial. Defendants Arthur Olstead and Olstead & Associates allege that plaintiffs have not attributed any misrepresentation to them and that they had no role in providing promotional material. The PHS defendants argue that liability under § 325F.69 requires proof equivalent to that for common law fraud. They claim that they cannot be liable for fraud because they did not know, and could not have known, that the Energy Brain valuations were exaggerated.

■ The level of culpability required to prove liability under § 325F.69 appears to be an open question under Minnesota law. The Minnesota Supreme Court has determined that § 325F.69 is not a strict liability statute and that at least "some degree of culpability" is required before liability is imposed. *Jenson v. Touche Ross & Co.*, 335 N.W.2d at 728. The level of culpability necessary to state a claim is not so strict as the PHS defendants assert, however. "The Consumer Fraud Act is broader than common law fraud." *Le Sage v. Norwest Bank Calhoun–Isles N.A.*, 409 N.W.2d 536, 539 (Minn.App.1987). The actionable misrepresentation or omission may occur through silence "if there is a relationship of trust or confidence, ... or an unequal access to information." *Cashman v. Allied Products Corp.*, 761 F.2d 1250, 1255 (8th Cir.1985). *Cashman* further states that:

It is not necessary that the one who makes the misrepresentation knows that it is false. If an individual makes a statement which turns out to be false, and makes it of his own knowledge when in fact he does not know whether it is true or false, that is a misrepresentation.

Even if a misrepresentation is made innocently, it would operate as a fraud upon plaintiff if made unqualified or as of the representor's own knowledge.

*Id.* at 1255 (quoting with approval trial court's instructions to the jury on misrepresentation). It therefore appears that a cause of action under the statute is made out if plaintiffs supply proof of conduct equivalent to negligent misrepresentations or omissions.

■ In order to be granted summary judgment on the misrepresentation claim, plaintiffs must make specific allegations of misrepresentation and provide factual support that each element of their prima facie case is met as a matter of law. *See* Fed.R. Civ.P. 56(c). The Winona plaintiffs apparently rely on the court's previous determination that the fundamental fraud perpetrated by the national defendants was the

overvaluation of the Energy Brain units. *See* 692 F.Supp. at 1063.[13]

It is doubtful that liability under § 325F.69 may be imposed on that basis alone, however—particulary on a motion for summary judgment. There are several deficiencies in the Winona plaintiffs' allegations and evidence. They have failed to specify just what the alleged misrepresentations or negligent omissions were or to whom they were made. Plaintiffs also contend that they need not prove that they relied on the misrepresentations and that the reliance caused their alleged injuries. That misstates their burden under Minnesota law. *See, e.g., Le Sage v. Norwest Bank Calhoun–Isles,* 409 N.W.2d at 539 (plaintiffs "will bear the burden [at trial] of proving the proper legal nexus between the complained of acts and their alleged monetary losses.").

Finally, the Winona plaintiffs make the bare allegation that defendants are not entitled to assert any affirmative defenses to the § 325F.69 claim. Plaintiffs do not discuss whether the PFM defendants' claims of due diligence or the disclaimers contained in the offering materials might be a defense or otherwise relieve them of some liability. For these reasons the Winona plaintiffs' motion for summary judgment on count XIII should be denied. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment appropriate only when no genuine facts are disputed and the moving party is entitled to judgment as a matter of law).

Accordingly, based upon the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. The motion for summary judgment of defendants Preeshl, Helstad, Shoup & Co., Robert C. Shoup, Michael J. Bruder, Mary K. Glubka and Earl Engelson (the PHS defendants) on counts III of the second amended complaint is granted, and that count against them is dismissed.

2. The PHS defendants' motion for summary judgment on count IV is denied.

3. The PHS defendants' motion to dismiss all remaining counts without prejudice is denied.

4. The motion of plaintiffs Duane Speed, Donald Bauer, Fred R. Bauer, Dr. H. Robert Woolley, David Culver, Nancy C. Woolley, Alan Nelson, Anthony Fischer, Frances Zeches, Richard Horst, Peter Woodworth, Pat K. Woodworth, Richard Thompson, Judy Thompson, John Woodworth, Philip Feiten, John Beard, and John Bengfort (the Winona plaintiffs), for summary judgment on counts VII and XIII against defendants Professional Financial Management, Ltd., James Kmetz, Joe Kmetz, J. Kmetz & Associates, Arthur Olstead, and Olstead & Associates (the PFM defendants) and the PHS defendants, is denied.

---

**13.** This overvaluation is the basis of plaintiffs' projected tax benefits; the false projections per-vade all of the promotional material supplied to plaintiffs.