**B.L. SAILORS, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**NORTHERN STATES POWER COMPANY; James Howard; Edwin M. Theisen; H. Lyman Bretting; David A. Christiansen; W. John Driscoll; N. Bud Grossman; Dale L. Haakenstad; Allen F. Jacobson; Richard M. Kovecevich; Donald W. McCarthy; John E. Pearson; G.M. Pieschel; Margaret R. Preska; A. Patricia Sampson, Defendants–Appellees.**

No. 92–2963.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1993.

Decided Sept. 2, 1993.

Before RICHARD S. ARNOLD, Chief Judge, LAY, Senior Circuit Judge, and FAGG, Circuit Judge.

LAY, Senior Circuit Judge.

B.L. Sailors, an investor in Northern States Power Company (NSP) common stock, brought a putative class action against NSP and its officers and directors under section 10(b) of the Securities Exchange Act of 1934, as amended 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b–5. Sailors also alleges the defendants violated the Minnesota Securities Act, Minn.Stat. § 80A.01 *et seq.*, and the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. § 325F.69 Subd. 1, and committed common law fraud and negligent misrepresentation.

Sailors alleges that NSP failed to make certain public disclosures relating to a $120.7 million rate increase it had requested from the Minnesota Public Utilities Commission (MPUC). Sailors purchased NSP common stock between January 1, 1990 and August 7, 1990, while the rate proposal was pending. Although both parties agree that plaintiff's security fraud claims are based on the fraud-on-the-market theory, plaintiff's complaint suggests that in purchasing the NSP stock Sailors relied upon information provided by NSP as well as reports relating to NSP's rate application in the local media. On August 6, 1990, the MPUC denied NSP's rate application. The price of NSP stock dropped $6.00 a share. This action was thereafter commenced.

The district court[1] granted NSP's motion for summary judgment holding that NSP had no duty to disclose specific facts about its rate application and that the claims of non-disclosure concerned characterizations that would not have been material to an investor's judgment. We affirm the grant of summary judgment on the singular ground that the defendant had no duty to disclose the alleged omissions or to correct any alleged misstatements.

In *Basic, Inc. v. Levinson,* 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 987 n. 17, 99

Mark Reinhardt, St. Paul, MN, argued (Jon Kingstad, Afton, MN, on the brief), for plaintiff-appellant.

Timothy Thornton, St. Paul, MN, argued (Scott Knudson and Kathleen Erickson Di-Giorno on the brief), for defendants-appellees.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

L.Ed.2d 194 (1988), the Supreme Court observed that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5." A duty arises, however, if there have been inaccurate, incomplete or misleading disclosures. *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26–27 (1st Cir.1987).

■ Plaintiff concedes that, as the district court found, defendants' public announcement of a rate increase disclosed (1) that "NSP's rate increases were contingent in that they were subject to MPUC approval," and (2) "that any interim rate increases were subject to refund." Plaintiff argues, however, that NSP had a duty to disclose specific facts which a reasonable investor would have found helpful in evaluating NSP's chances of obtaining a large rate increase. Plaintiff does not argue that NSP should have predicted the outcome of the rate case—only that the utility company deliberately withheld fact-specific information which would have allowed him to make informed investment decisions. The alleged non-disclosures were as follows: (1) NSP's use of a disfavored future forecasted year in its rate application; (2) the unprecedented opposition to the rate increase filed by the state and intervenors; (3) NSP's use of an untried theory seeking higher rates as a reward for high performance; (4) the improper allocation of expenses in NSP's operation the next year; and (5) a motion to dismiss the rate case that the Minnesota Attorney General and the Minnesota Department of Public Service filed. The district court found that none of the above factors were firm specific and that such facts were not material information required to be disclosed.

Although plaintiff asserts that he did not rely on NSP's failure to predict whether it would receive the rate increase, he urges that NSP should have informed the public that its proposal was a gamble since NSP was relying on improper, disfavored and untried strategies. In other words, Sailors urges that NSP should have informed the public that the rate increase was highly problematical. It is clear to us that NSP's strategies for obtaining the rate increase, as well as the extent of the opposition to NSP's proposal, relate to the predictability of the rate increase. The fact that the state Attorney General and the state Department of Public Service opposed the increase by filing motions to dismiss are speculative factors in evaluating the predictability of receiving the increase.

■ The "litigation strategy" used by NSP cannot be the basis of a Rule 10b–5 action under such circumstances. There is no basis to hold that NSP was not acting in good faith in seeking the rate increase. Plaintiff suggests that NSP should in effect publicize that it was probably not entitled to the rate increase. Assuming that the information may have been material to an investor, we find no duty of NSP to disclose any of the information. Much of what the plaintiff argues was hidden from public view is actually part of the regulatory process and upon reasonable inquiry was available to the public. The mere fact that a public utility embarks on a public relation campaign over a rate case does not create a duty to engage in a day-by-day, play-by-play announcement of the proceeding. We agree with the Seventh Circuit's conclusion that once a utility has informed investors that it is involved in a regulatory proceeding, it has no affirmative duty to provide investors with a further summary of the regulatory process. *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 515–18 (7th Cir.1989). In addressing claims that a utility company failed adequately to disclose the risk that the government might reject its application for a license to run a series of nuclear plants, the Seventh Circuit in *Wielgos* said:

> Issuers need not "disclose" Murphy's Law or the Peter Principle, even though these have substantial effects on business. So too issuers need not estimate the chance that a federal agency will change its rules or tighten up on enforcement. Securities laws require issuers to disclose *firm-specific* information; investors and analysts combine that information with knowledge about the competition, regulatory conditions, and the economy as a whole to produce a value for stock. Just as a firm needn't disclose that 50% of all new products vanish from the market within a short time, so Commonwealth Edison needn't

disclose the hazards of its business, hazards apparent to all serious observers and most casual ones.

*Id.* at 515 (citation omitted).

Sailors' argument is grounded in his view that the rate case was only nominally public. Sailors argues that NSP had a duty to disclose many of the developments in the rate proceeding because the information did not adequately enter the market. *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 503 (9th Cir.1992) (stating that "brief mention in a few poorly-circulated or lightly-regarded publications" does not relieve a corporation of the duty to disclose material information); *In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 513 (9th Cir.1991); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir.), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1989); *Siebert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (5th Cir.1978); *Powell v. American Bank & Trust Co.*, 640 F.Supp. 1568, 1578–81 (N.D.Ind. 1986). We observe, however, that the mass media and the specialized press made repeated references to the general concerns about NSP's application and to some of the specific problems about which Sailors complains. One market analyst remarked about uncertainty over NSP's request because "[c]entral to the Company's testimony . . . is the idea that efficient producers should be rewarded with higher allowed returns. Incentive regulation is uncommon for electric utilities." Another analyst suggested that "[w]e'd stay on the sidelines until the rate case is settled."

We further question Sailors' assertion that much of the information he seeks was not public. As we stated, having alerted the market to the existence of regulatory proceedings, NSP had no duty to inform them of each of the steps required in that process. *Wielgos*, 892 F.2d at 517.[2] "The securities laws require disclosure of information *that is not otherwise* in the public domain." *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1323 (7th Cir.1988) (emphasis added); *Ward v. Succession of Freeman*, 854 F.2d 780, 793 (5th Cir.1988) (because passage of a statute is "as a matter of law in the public domain," there is no duty of disclosure), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). We have held that Rule 10b–5 does not protect "nondisclosed facts equally known *or available* to both parties." *Myzel v. Fields*, 386 F.2d 718, 736 (8th Cir. 1967) (emphasis added), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *see also City Nat'l Bank v. Vanderboom*, 422 F.2d 221, 231 (8th Cir.) (a company has no duty to disclose if investors have "ready access to the information involved"), *cert. denied*, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970).[3] We need not be concerned that NSP chose to monitor the opposition closely while investors such as Sailors apparently did not; public filings are equally available to all. Given the vast amount of publicity concerning NSP's rate proposal, we agree with the district court that all of the information Sailors "charges should have been disclosed . . . was public information that could have easily been obtained by any investor."[4]

---

2. In *Wielgos*, the Seventh Circuit held that a utility company had no duty to provide investors with specific information on the stages of a regulatory proceeding, the existence of which it had already disclosed. 892 F.2d at 517. The court stated:

> This is rather like revealing pending litigation without saying that the case is pending before a magistrate, and that costs will go up if the magistrate should make an adverse (and erroneous) but influential recommendation.
>
> Issuers of securities must reveal firm-specific information. Investors combine this with public information to derive estimates about the securities' value. It is pointless and costly to compel firms to reprint information already in the public domain.

*Id.*

3. *Myzel* and *City National Bank* rely upon the Supreme Court's statement about the common law in *Shappirio v. Goldberg*, 192 U.S. 232, 241–42, 24 S.Ct. 259, 261, 48 L.Ed. 419 (1904), in which the Court stated: "When the means of knowledge are open and at hand or furnished to the purchaser or his agent and no effort is made to prevent the party from using them . . . he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor."

4. We also find it significant that the omissions in the cases plaintiff relies on mostly concern internal corporate affairs. *See, e.g., Apple Computer*, 886 F.2d at 1111–12 (addressing the market's knowledge of internal corporate problems in the

**614**

Sailors also brings pendent state law claims alleging common law fraud and negligent misrepresentation as well as claims under the Minnesota Securities Act, Minn.Stat. § 80A.01 *et seq.*, and the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. § 325F.69 Subd. 1. The trial judge accepted jurisdiction over these claims and dismissed them on summary judgment. We agree. Each of these causes of action requires a misrepresentation or, in the case of an omission, a duty of disclosure.[5] In the above discussion on the federal claims we have concluded that neither exists. Thus, the district court properly dismissed the state law claims.

For the above reasons, we affirm the judgment of the district court.

---

development of two heralded new products). Corporations remain the best source of accurate, up-to-date information about their own internal developments. Here, however, intervenors were a better source of information concerning a substantial portion of the allegedly omitted information. Certainly they were a far better source concerning their own opposition than was NSP.

5. As to Sailors' claims under the Minnesota Securities Act, Minn.Stat. § 80A.01 *et seq.*, the parties agree that we are bound by our decision on the federal claims. *See In re Flight Transp. Corp. Sec. Litig.*, 593 F.Supp. 612, 619 (D.Minn.1984) (finding Rule 10b–5 and § 80A.01 identical in all respects pertinent to this lawsuit). As to Sailors' common law fraud claims, the duties are spelled out in *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W.2d 619, 622 (1972) (outlining state law requirements). As to the Minnesota Prevention of Consumer Fraud Act claim, federal courts have assumed that the state statute carries similar duties of disclosure. *See Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1255 (8th Cir.1985); *In re Professional Fin. Management, Ltd.*, 703 F.Supp. 1388, 1397 (D.Minn.1989). Although state courts have not addressed the issue directly they have likened the statutory requirements to those of negligent misrepresentation. *Church of the Nativity of Our Lord v. Watpro, Inc.*, 474 N.W.2d 605, 612 (Minn.Ct.App.1991), *aff'd on other grounds*, 491 N.W.2d 1 (Minn.1992) (declining to address the statute's requirements). For there to be liability for an omission under a negligent misrepresentation theory, there must be a duty owed. *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 378 n. 3 (Minn.1989).